**Martin and Sandra COYNE et al., Appellants,**

v.

**KAUFMAN COUNTY, Appellee.**

**No. 11–03–00120–CV.**

Court of Appeals of Texas, Eastland.

July 15, 2004.

Richard Morrison IV, Blackburn Carter, P.C., Houston, for appellant.

Robert Hawkins, S. Cass Weiland, Patton Boggs LLP, Dallas, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

W.G. ARNOT, III, Chief Justice.

This appeal arises out of a lawsuit filed by over 30 residents of Kaufman County against approximately 20 defendants with respect to the mining of limestone from pits located near the plaintiffs' homes and properties. The defendants to the lawsuit consist of mining companies, trucking companies, and Kaufman County (the County). Appellants asserted claims in the suit against the County with respect to the care and maintenance of three county roads located in the vicinity of the mining operations.[1] Appellants generally contend that their property has been taken by the County without compensation in violation of TEX. CONST. art. I, § 17. They also alleged that the County's operation of the roads constitutes a nuisance. The trial court granted summary judgment in favor of the County on the ground of sovereign immunity. After obtaining a severance of their claims against the County, appellants

---

1. The following individuals are appellants in this appeal: Martin and Sandra Coyne; Richard and Patricia DeLange; Kathleen Eskue; Carolyn and Michael Matus, individually and A/N/F of Nicole Matus and Kelsey Matus (minors); Sonya and William Morley; Gordon Sanders; Alfred and Coral Selman; Sharien and Richard Strange, individually and A/N/F of Alexandria Strange (a minor); Thomas and Gloria Strange; Bambi Sue and Timothy Wilburn, individually and A/N/F of Bailee Wilburn and Sawyer Wilburn (minors); Mona Bland; Russell and Elizabeth Limoges; Homer and Carolyn Taylor; and Joe Rice.

bring this appeal, attacking the trial court's entry of summary judgment in a single issue. We affirm in part and reverse and remand in part.

We review the trial court's entry of summary judgment *de novo. Provident Life and Accident Insurance Company v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Provident Life and Accident Insurance Company v. Knott, supra* at 215. The County filed a "traditional" motion for summary judgment under TEX.R.CIV.P. 166a(c). Under Rule 166a(c), the party moving for summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Provident Life and Accident Insurance Company v. Knott, supra* at 215–16. To prevail as a defendant, the movant must negate one or more elements of each of the plaintiff's causes of action or prevail on a defense as to each of the plaintiff's causes of action. *American Tobacco Company, Inc. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997).

Appellants assert in their sole issue that the trial court erred in granting summary judgment in favor of the County. Prior to addressing the merits of the summary judgment contentions, we must consider a preliminary issue raised by appellants regarding the County's grounds for summary judgment. Appellants cite *McConnell v. Southside Independent School District,* 858 S.W.2d 337, 341 (Tex. 1993), for the proposition that summary judgment may only be based on grounds specified in the motion for summary judgment. They contend that the County's motion only sought summary judgment on the ground of sovereign immunity. It appears that appellants are arguing that a summary judgment granted in favor of the County on the ground of sovereign immunity is improper because their taking and nuisance claims have been recognized as exceptions to the doctrine of governmental immunity.

We disagree with appellants' narrow construction of the County's motion for summary judgment. The County stated as follows in the "introduction" section of the motion:

> The County has pled the defense of sovereign immunity. *See Def.'s First Am. Answer at 3.* For the reasons explained below, the County is entitled to summary judgment on each of Plaintiffs' claims on this basis. Plaintiffs cannot demonstrate that the County's conduct amounts to a nuisance or a "taking" in violation of the Texas Constitution so as to overcome the County's immunity defense. Nor can Plaintiffs establish that the County's actions fall within the limited waiver of immunity found in the Texas Tort Claims Act. (Emphasis in original)

The County included within the "ARGUMENT AND AUTHORITIES" section of the motion the following headings in boldfaced type: "A. The County's Conduct Does Not Constitute a 'Taking' Under the Texas Constitution"; "B. Plaintiffs' Nuisance Claim Does Not Defeat the County's Immunity Defense"; and "C. The County is Immune From Liability For Any Negligence." Accordingly, one of the motion's grounds for summary judgment included the County's contention that its conduct did not constitute a taking under the Texas Constitution. As set forth below, the "taking" question is the determinative element with respect to both the constitutional

claim and the nuisance claim asserted by appellants.

The Texas Supreme Court recently issued two opinions which significantly affect the issues in this appeal. *Tarrant Regional Water District v. Gragg,* No. 01–0362, —— S.W.3d ——, 2004 WL 1439646 (Tex.-June 25, 2004), involved a claim of inverse condemnation based upon a change in flooding characteristics that damaged a ranch located in East Texas. *Tarrant Regional Water District v. Gragg, supra* at ——–––——, 2004 WL 1439646 at * 1. The court in *Gragg* addressed the distinction between mere negligent governmental conduct versus conduct which rises to the level of a taking. *Tarrant Regional Water District v. Gragg, supra* at ——, ——–—–, 2004 WL 1439646 at * 2–3; *see City of Tyler v. Likes,* 962 S.W.2d 489, 505 (Tex.1997). The court stated as follows:

> *Article I, Section 17, of the Texas Constitution* provides:
>
>> No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person.
>
> At the heart of the *takings clause* lies the premise that the government should not force some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. A taking under this provision may be physical or regulatory. A physical taking may occur when the government physically appropriates or invades private property, or unreasonably interferes with the landowner's right to use and enjoy it. When the government takes private property without first paying for it, the owner may recover damages for inverse condemnation. But mere negligence that eventually contrib-

utes to property damage does not amount to a taking.

\* \* \*

> Over the years, we have articulated the standard for a compensable physical taking in various ways. The cases reflect our efforts to account for several concerns in drawing the line between mere negligence and an unconstitutional taking. For one, we strive to avoid what would be an anomalous result if the State, an entity otherwise generally entitled to immunity for negligence, were subject to liability for something less than intentional behavior. More importantly, though, we seek to ensure that the public does not bear the burden of paying for property damage for which it received no benefit. As we have noted, our Constitution provides for compensation only if property is damaged or appropriated for or applied to public use. That is the factor which distinguishes a negligence action from one under the constitution for destruction. Accordingly, we have sought objective indicia of intent in particular contexts to determine whether property has been taken or damaged in furtherance of the public interest. (Emphasis added) (Citations & Quotations omitted)

*Tarrant Regional Water District v. Gragg, supra* at ——–––——, 2004 WL 1439646 at * 6–7.

In *City of Dallas v. Jennings,* 142 S.W.3d 310, 311–12 (Tex.2004), the claimants brought suit for damages they sustained when their home was flooded with raw sewage as a result of the City's sewer system backing up. The claimants in *Jennings* alleged the same two theories of recovery as alleged by appellants in the instant appeal: unconstitutional taking and nuisance. *City of Dallas v. Jennings, supra* at 311–12. The trial court granted summary judgment in favor of the City on

the ground of governmental immunity.[2] *City of Dallas v. Jennings, supra* at 312.

The supreme court began its analysis in *Jennings* by noting that "taking," "damaging," and "destruction" of one's property are three distinct claims arising under *Article I, Section 17,* and that the term "taking" has become used as a collective term to refer to all three types of claims. *City of Dallas v. Jennings, supra* at 313. The claimants in *Jennings* asserted a "damage" claim under the taking clause. *City of Dallas v. Jennings, supra* at 313. The material issue to be resolved in *Jennings* centered on the type of intent needed to establish a claim of unconstitutional taking as a result of damage to one's property. *City of Dallas v. Jennings, supra* at 313. The claimants argued that a "damage" taking occurs if the governmental entity intentionally performs the act which causes the damage. *City of Dallas v. Jennings, supra* at 313. Appellants present the same contention in this appeal. The City asserted in *Jennings* that the relevant question is whether the government intended to damage the property, not whether it merely intended to take an action that accidentally resulted in such damage. *City of Dallas v. Jennings, supra* at 313. The supreme court resolved this issue by holding that:

> [W]hen a governmental entity physically damages private property in order to confer a public benefit, that entity may be liable under *Article I, Section 17* if it (1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an authorized gov-

ernment action—that is, that the damage is necessarily an incident to, or necessarily a consequential result of the government's action. (Citations & Quotations omitted)

*City of Dallas v. Jennings, supra* at 314.

The supreme court in *Jennings* also addressed the circumstances under which a governmental entity can be liable under a nuisance theory for a governmental function.[3] *City of Dallas v. Jennings, supra* at 315–16. The court rejected the claimants' contention that a nuisance cause of action is an independent exception to sovereign immunity. *City of Dallas v. Jennings, supra* at 316. The court held that a governmental entity's nuisance liability arises only when governmental immunity is clearly and unambiguously waived by statutory provision. *City of Dallas v. Jennings, supra* at 316. Under the court's analysis, a governmental entity will not have nuisance liability unless the claimant establishes liability under either the Tort Claims Act[4] or the taking provision of the Texas Constitution. *City of Dallas v. Jennings, supra* at 316.

Appellants' allegations against the County relate to the trucking companies' hauling mined rock over unpaved county roads. They contend that the trucks cause dust to be deposited upon their properties. They additionally assert that the trucks drive onto their properties because the county roads are too narrow. Appellants complain that the County has failed to alleviate these problems by refusing to pave and widen the roads and by failing to implement traffic control measures to reduce

**2.** The City also sought a no-evidence summary judgment under TEX.R.CIV.P. 166a(i). We note that, in this proceeding, the County did not seek a no-evidence summary judgment.

**3.** The County's maintenance of county roads is a governmental function. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(4) (Vernon Pamph. Supp.2004).

**4.** *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 1997).

the trucks' speed. Based upon these allegations, appellants assert that the County has both damaged and appropriated their properties by failing to act.[5]

Appellants have also asserted taking claims premised on acts of commission on the part of the County. They contend that the County's own trucks cause dust to be deposited onto their properties by failing to observe traffic regulations and by failing to use tarps to cover their loads. Appellants also alleged that work performed by the County on County Roads 349 and 350 has caused erosion and flooding on their properties. Some of appellants asserted claims with respect to the County's efforts to widen County Road 346. Appellants Mona Bland, Russell and Elizabeth Limoges, and Homer and Carolyn Taylor alleged that they suffered flood damage and the destruction of barbed wire fencing. They also alleged that large brush piles were pushed onto their properties by the County.

The County moved for summary judgment on the general premise that appellants' taking claims were based on the County's alleged negligent conduct rather than the County's intentional acts. The County supported its motion for summary judgment with an affidavit of Ivan Johnson, the County Commissioner of Precinct 3. Johnson's affidavit states in relevant part as follows:

At no time relevant to the allegations made in this lawsuit have I or any other representative of Kaufman County acted or failed to act with the intention that Plaintiffs' property be taken for public use. No representative of Kaufman County has authorized the companies engaging in the blasting and mining operations to drive onto Plaintiffs' property or otherwise use their property as a

shoulder for county roads. Additionally, during the course of maintaining the county roads and the drainage ditches along those roads within my precinct, I nor any other representative of Kaufman County has acted or failed to act with the intention that Plaintiffs' property suffer increased flooding or erosion.

5. During the course of conducting their blasting and mining operations, the companies utilized, among other roads, County Road 346 for transporting their materials and/or hauling rock. At the time, I was concerned with the maintenance of County Road 346 which is located within my precinct. To that end, the County contracted with one of the companies, Van Zandt Rock Company, to provide the labor, money, and other property to aid in widening and maintaining County Road 346. Van Zandt Rock Company performed the necessary work for this project and, at all relevant times, was acting as an independent contractor with the County. Van Zandt Rock Company was never an employee of Kaufman County. Attached as Exhibit "B" is a true and correct copy of the contract entered into between Kaufman County and Van Zandt Rock Company.

6. Furthermore, no representative of Kaufman County authorized the damages to Plaintiffs' property that may have occurred during the process of widening County Road 346.

▮ Whether particular facts are sufficient to establish a taking presents a question of law which we review *de novo*. *Tarrant Regional Water District v. Gragg, supra* at ——, 2004 WL 1439646 at * 11; *General Services Commission v. Little–Tex Insulation Company, Inc.*, 39 S.W.3d

---

**5.** Appellants contend that their properties have been appropriated as a result of the trucking companies' use of their properties for "de facto" shoulders of the county roads.

591, 598 (Tex.2001). To establish a taking claim, a claimant must prove that (1) the governmental entity intentionally performed certain acts (2) that resulted in a "taking" of property (3) for public use. *General Services Commission v. Little–Tex Insulation Company, Inc., supra* at 598; *Steele v. City of Houston,* 603 S.W.2d 786, 788–92 (Tex.1980). Many of appellants' claims are premised on allegations that the County failed to undertake certain measures to prevent the encroachment and damages alleged to have been caused by trucks owned by third parties. Appellants' assertions that the County should have widened roads, paved roads, and enforced traffic regulations do not constitute intentional acts on the part of the County sufficient to establish a taking claim. An allegation that a person or entity failed to undertake an act it should have taken constitutes an allegation of negligent conduct. The Texas Supreme Court has repeatedly held that acts of mere negligence will not support a taking claim. *Tarrant Regional Water District v. Gragg, supra* at ——, ——, 2004 WL 1439646 at *7, 18; *City of Dallas v. Jennings, supra* at 313; *City of Tyler v. Likes, supra* at 505. Therefore, we sustain the trial court's entry of summary judgment on appellants' taking and nuisance claims which are premised on allegations that the County failed to undertake various actions.[6]

▉ We reach a different result with respect to the damage allegations arising from the operation of the County's trucks over the roads and the County's maintenance of the roads. Commissioner Johnson's affidavit focused on the "intent" element of a taking claim. He stated that the County did not intend to cause flooding, erosion, or other damage to appellants' properties. As such, his affidavit only addressed the concept of "intent to damage" which the supreme court rejected in *Jennings* as the sole criteria in a "damage" taking claim. *City of Dallas v. Jennings, supra* at 314. Under the supreme court's standard adopted in *Jennings,* summary judgment would not be appropriate on the issue of intent unless the County also conclusively established that it did not know that the specific property damage claimed by appellants was substantially certain to result from its actions. *City of Dallas v. Jennings, supra* at 314.

Furthermore, the statements in Johnson's affidavit pertaining to Van Zandt Rock Company's work on County Road 346 do not conclusively absolve the County of liability. Johnson stated that "at all relevant times, [Van Zandt Rock Company] was acting as an independent contractor with the County." However, Johnson also stated that the County contracted with the rock company "to *aid* in widening and maintaining County Road 346." (Emphasis added) The statement that Van Zandt Rock Company "aid[ed]" the County in widening and maintaining County Road 346 suggested that the rock company's role with respect to the project was something less than as an independent contractor. The contract between the County and the rock company did not provide that the rock company would assume exclusive responsibility for widening and maintaining County Road 346. Instead, the contract only provided that the rock company would donate labor, money, and other property to aid in maintaining County Road 346 for a one-year period. *See* TEX.

---

**6.** Appellants contend that the County's summary judgment evidence is insufficient because the County has not admitted that its conduct constituted negligence. We disagree with this proposition. Irrespective of the County's admission or denial of negligent conduct, appellants' contentions that the County failed to widen roads, pave roads, and enforce traffic regulations are allegations of negligent conduct.

TRANSP. CODE ANN. § 252.109 (Vernon 1999). Accordingly, appellants' sole appellate issue is sustained in part.

The trial court's entry of summary judgment is affirmed with respect to appellants' taking and nuisance claims which are premised on the allegations that the County failed to undertake various actions including widening roads, paving roads, and enforcing traffic regulations. The portion of the judgment dismissing appellants' remaining claims is reversed, and these claims are remanded to the trial court.